JOHN DOE[1] *vs.* MARY MOE.[2]

No. 02-P-381.

Essex. November 20, 2003. - May 16, 2005.

Present: LAURENCE, MILLS, & TRAINOR, JJ.

*Negligence,* Duty to prevent harm. *Wanton or Reckless Conduct.*

This court concluded that it was inappropriate and unreasonable to hold
consenting adults to a standard of reasonable care in the conduct of private
consensual sexual behavior, but that it was appropriate that they be held to
a standard that requires them not to engage in wanton or reckless conduct
toward each other during such consensual sexual conduct [518-522];
therefore, where the record in a civil action for serious physical injury suf-
fered by the plaintiff during consensual sexual intercourse with the
defendant did not depict conduct that could fairly be categorized as wanton
or reckless, summary judgment in favor of the defendant was appropriate
[522].

CIVIL ACTION commenced in the Superior Court Department on
September 23, 1997.

The case was heard by *Thomas P. Billings,* J., on a motion
for summary judgment.

*John N. Greenwood* for the plaintiff.

*Stephen G. Anderson* for the defendant.

TRAINOR, J. John Doe (plaintiff) appeals from a summary
judgment entered in the Superior Court in favor of Mary Moe
(defendant). The plaintiff's complaint sought recovery for seri-
ous physical injury suffered during consensual sexual intercourse
with the defendant. The motion judge concluded that the
ordinary negligence standard was inapplicable to personal injury
resulting from consensual sexual intercourse and, applying a

---

[1] A pseudonym.

[2] A pseudonym.

heightened standard of recklessness, found that the defendant was entitled to summary judgment. We agree that the defendant is entitled to summary judgment and, therefore, affirm the order, but for reasons somewhat different from those cited by the Superior Court judge.

*Procedural history.* On September 23, 1997, the plaintiff filed his complaint in the Superior Court. The case was remanded to District Court and called for trial there on February 14, 2001. On the day of trial, the defendant moved to dismiss the complaint and a District Court judge allowed the motion, purporting to treat it as a motion to dismiss for failure to state a claim upon which relief can be granted under Mass.R. Civ.P. 12(b)(6), 365 Mass. 754 (1974). The District Court judge concluded that the plaintiff's complaint was deficient in its failure to allege facts that could show that the defendant owed the plaintiff a duty of care or that she had proximately caused the plaintiff's injury. The District Court judge also expressed the policy rationale that he was reluctant "to expand the reach of tort law further into the bedrooms of this Commonwealth" and that the Legislature, if it wished to create a cause of action for negligent sexual intercourse, could do so. The plaintiff filed for retransfer of the case pursuant to G. L. c. 231, § 102C, and on November 13, 2001, the defendant moved the Superior Court for summary judgment and dismissal.

In granting the defendant's motion for summary judgment, the Superior Court judge concluded that the defendant's interest in privacy created a policy rationale sufficient to elevate the standard of care in this case to recklessness, rather than ordinary negligence. The Superior Court judge referenced the line of cases beginning with *Gauvin* v. *Clark*, 404 Mass. 450 (1989), which apply a recklessness standard to sports activities, rather than a negligence standard, because of the likelihood that a negligence standard would chill athletic competition. Although the judge found the *Gauvin* "chilling" rationale to be inapplicable to the present case, he determined that the alternative privacy rationale was sufficient to elevate the standard of care to recklessness. Because the judge concluded that this elevated

standard was not violated on the facts of the case, he entered summary judgment for the defendant.[3]

*Facts.* The summary judgment record, viewed in the light most favorable to the plaintiff, *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983), establishes the following facts. The plaintiff and the defendant were in a long-term committed relationship. Early in the morning of September 24, 1994, they were engaged in consensual sexual intercourse. The plaintiff was lying on his back while the defendant was on top of him. The defendant's body was secured in this position by the interlocking of her legs and the plaintiff's legs. At some point, the defendant unilaterally decided to unlock her legs and place her feet on either side of the plaintiff's abdomen for the purpose of increasing her stimulation. When the defendant changed her position, she did not think about the possibility of injury to the plaintiff. Shortly after taking this new position, the defendant landed awkwardly on the plaintiff, thereby causing him to suffer a penile fracture.

Although this was generally a position the couple had used before without incident, the defendant did vary slightly the position previously used, without prior specific discussion and without the explicit prior consent of the plaintiff. It is this variation that the plaintiff claims caused his injury. While the couple had practiced what the defendant described as "light bondage" during their intimate relations, there was no evidence of "light bondage" on this occasion. The plaintiff's injuries were serious and required emergency surgery. He has endured a painful and lengthy recovery. He has suffered from sexual dysfunction that neither medication nor counseling have been able to treat effectively.

*Discussion.* The plaintiff contends that in Massachusetts

---

[3]The judge correctly denied the defendant's motion to dismiss for improper retransfer, after determining that the District Court judge actually had entered summary judgment, although the latter had mislabeled his action a rule 12(b)(6) dismissal. The retransfer to the Superior Court subsequent to entry of summary judgment in District Court was proper. See *Bender* v. *Automotive Specialties, Inc.*, 407 Mass. 31, 35 (1990). Contrary to the defendant's argument, the plaintiff's apparent failure to request a jury trial in the Superior Court within ten days after the filing of the District Court decision in the Superior Court (see G. L. c. 231, § 102C) has no bearing on whether the retransfer was proper.

"ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm," *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989), and that every person is responsible for injury that results from a lack of ordinary care. Before liability for negligence can be imposed, however, it must first be established that the defendant owed the plaintiff a legal duty of care. See, e.g., *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995); *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 320 (2002); *Remy* v. *MacDonald*, 440 Mass. 675, 676 (2004). The existence of such a duty is a question of law, *Wallace* v. *Wilson*, 411 Mass. 8, 12 (1991); *Davis* v. *Westwood Group*, *supra* at 743, and is "to be determined by reference to existing social values and customs and appropriate social policy." *Cremins* v. *Clancy*, 415 Mass. 289, 292 (1993), quoting from *Wallace* v. *Wilson*, *supra*.

Whether persons involved in consensual sexual relations owe each other a legal duty of reasonable care in the conduct of those relations is a question of first impression in Massachusetts. Generally, as the plaintiff claims, tort law requires that a duty of reasonable care be exercised to avoid injury to others. Reasonable care is determined by the "standard of conduct demanded by the community for the protection of others against unreasonable risk." Restatement (Second) of Torts § 283 comment (c) (1965). However, "[i]t should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." Prosser & Keeton, Torts § 53, at 358-359 (5th ed. 1984). Here, the defendant can be found liable to the plaintiff for his injuries only if we determine that the defendant owed him a legal duty of reasonable care in the conduct of their consensual sexual relations. If we determine that no such duty of care existed, the defendant is entitled to summary judgment. See *Dhimos* v. *Cormier*, 400 Mass. 504, 507 (1987).

The Supreme Judicial Court has held that, while reasonable care is the duty owed in most circumstances, there are exceptions to this general principle, although "only strong arguments of public policy should justify a judicially created immunity for tortfeasors and bar to recovery for injured victims." *Lewis* v.

*Lewis*, 370 Mass. 619, 629 (1976). Pursuant to this rationale, Massachusetts has recognized a limited number of circumstances in which, while all other legal requirements of negligence are satisfied, the imposition of a duty has been determined to be inappropriate or unworkable. See, e.g., *Schofield* v. *Merrill*, 386 Mass. 244, 245 (1982) (affirming traditional rule that landowner owes adult trespasser no duty of reasonable care); *Gauvin* v. *Clark*, 404 Mass. at 454 (recklessness, not negligence, is standard upon which liability for injuries is determined between athletic participants); *Wallace* v. *Wilson, supra* (parent not responsible for injuries incurred by guest at underage drinking party, even though parent was aware of drinking); *Cremins* v. *Clancy, supra* at 292-293 (social host who has not provided liquor owes no duty of reasonable care to protect travelers on highway from intoxicated guest); *Remy* v. *MacDonald, supra* at 677 (expectant mother has no duty of care to refrain from negligently injuring her unborn fetus).

We must determine whether the application of a standard of reasonable care to private consensual sexual conduct is appropriate or even workable. Questions of fact that would arise from these circumstances must be susceptible to consideration by a fact finder without prejudice and in a spirit of impartiality. Addressing a like issue in a different context, the Supreme Judicial Court recognized that "in light of our own awareness that community values on the subject of permissible sexual conduct no longer are as monolithic" as prior precedent had suggested, it could no longer apply the statutory prohibition of G. L. c. 272, § 35, against "unnatural and lascivious" acts to private, consensual adult sexual conduct. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974).[4] There are no comprehensive legal rules to regulate consensual sexual behavior, and there are

---

[4]In *Balthazar*, the court noted that the words "unnatural and lascivious act" were once considered to have a "well defined, well understood, and generally accepted meaning" and that "the common sense of the community, as well as the sense of decency, propriety, and morality which all respectable persons usually entertain, [were once] sufficient to apply [those words] to a situation and determine what particular kind of conduct offends." *Commonwealth* v. *Balthazar*, 366 Mass. at 301, quoting from *Jaquith* v. *Commonwealth*, 331 Mass. 439, 442-443 (1954). The court acknowledged that a combination of the application of the First Amendment to the United States Constitution to portrayal of sexual conduct (citing *Miller* v. *California*, 413 U.S. 15, 24

no commonly accepted customs or values that determine parameters for the intensely private and widely diverse forms of such behavior.[5] In the absence of a consensus of community values or customs defining normal consensual sexual conduct, a jury or judge cannot be expected to resolve a claim that certain consensual sexual conduct is undertaken without reasonable care. Compare *Remy* v. *MacDonald*, 440 Mass. at 678 ("No set of clear existing social values and customs exist, and no settled social policy can be identified, to justify the maintenance of the present lawsuit"); *Conley* v. *Romeri*, 60 Mass. App. Ct. 799, 801-803 (2004) (claims of negligent infliction of emotional distress and fraud unavailable because there was no legally defined duty or recognized standard of conduct between parties in a dating relationship). We conclude, therefore, that there was no legal duty of reasonable care owed by the defendant to the plaintiff during their consensual sexual conduct.[6]

While it is inappropriate and unworkable to hold consenting adults to a standard of reasonable care in the conduct of private consensual sexual behavior, we conclude that it is appropriate that they be held to a standard that requires them not to engage in wanton or reckless conduct toward each other during such

---

[1973]) and changing community values dictated that the words "unnatural and lascivious" can no longer be applied to consensual sexual conduct. *Commonwealth* v. *Balthazar, supra* at 300-302.

[5]Modern judicial decisions trend away from governmental regulation of consensual sexual conduct. See generally *Griswold* v. *Connecticut*, 381 U.S. 479, 485-486 (1965) (holding State anticontraception statute unconstitutionally invaded privacy of marital bedroom); *Eisenstadt* v. *Baird*, 405 U.S. 438, 453 (1972) (expanding *Griswold* to protect unmarried persons from "unwarranted governmental intrusion" into contraception area); *Lawrence* v. *Texas*, 539 U.S. 558, 578 (2003) (emphasizing, in striking down State antisodomy statute, that "there is a realm of personal liberty which the government may not enter"), quoting from *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 847 (1992). Most States, including Massachusetts, have abandoned the so-called "heart balm" or amatory torts such as criminal conversation and alienation of affection. See G. L. c. 207, § 47B; *Quinn* v. *Walsh*, 49 Mass. App. Ct. 696, 701-705 (2000).

[6]We do not imply that this rule is applicable in cases alleging the negligent transmission of a sexually transmitted disease. See, e.g., *McPherson* v. *McPherson*, 712 A.2d 1043, 1045 (Me. 1998) (Supreme Judicial Court of Maine collecting cases and noting that courts throughout United States have recognized cause of action based on negligent transmission of sexually transmitted disease).

consensual sexual conduct. "The words 'wanton' and 'reckless' are . . . not merely rhetorical or vituperative expressions used instead of negligent or grossly negligent. They express a difference in the degree of risk and in the voluntary taking of risk so marked, as compared with negligence, as to amount substantially and in the eyes of the law to a difference in kind." *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). See *Cohen* v. *Davies*, 305 Mass. 152, 156 (1940) (indifference to consequences distinguishes wanton or reckless behavior from negligence). Since "[t]he essence of wanton or reckless conduct is intentional conduct . . . which . . . involves a high degree of likelihood that substantial harm will result to another," *Commonwealth* v. *Welansky, supra,* citing Restatement of Torts § 500 (1934), we believe that a fact finder is capable of recognizing such extreme conduct, impartially and without prejudice, even in the context of consensual sexual behavior.[7]

While the record in this case may have permitted a fact finder to conclude that the defendant's conduct exposed the plaintiff to some risk of harm, the record does not depict conduct that can be fairly categorized as wanton or reckless. Here, the undisputed facts demonstrate that the defendant did not think about possible injury to the plaintiff when she changed her position. There is no evidence in this record to suggest that the defendant's conduct created a "high degree of likelihood that substantial harm [would] result to [the plaintiff]," which is required to prove wanton or reckless conduct. *Commonwealth* v. *Catalina,* 407 Mass. 779, 789 (1990), quoting from *Commonwealth* v. *Welansky, supra.* Therefore, because the plaintiff has no reasonable expectation of proving an essential element of his case, summary judgment was appropriate. See *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 714 (1991).

*Judgment affirmed.*

---

[7]We note that the Supreme Judicial Court has held that one cannot, as a matter of public policy, consent to becoming the victim of an assault and battery by means of a dangerous weapon in the course of a sexual relationship. *Commonwealth* v. *Appleby,* 380 Mass. 296, 309-311 (1980).